FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR - 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
EASTERN SAVINGS BANK,

                  Plaintiff,

          - against -

MICHELE WALKER, et al.,

                  Defendants.

------------------------------------------------------------ X

**MEMORANDUM
DECISION AND ORDER**

11 Civ. 0798 (BMC)

**COGAN,** District Judge.

Plaintiff Eastern Savings Bank, FSB, filed the instant action to foreclose on a mortgage against Michelle Walker, the Internal Revenue Service, the New York State Department of Taxation and Finance ("Department of Taxation"), the State of New York, the New York City Parking Violations Bureau, the New York City Environmental Control Board, and John Doe #1 through John Doe #12. Plaintiff alleges that this Court has subject matter jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.

The Court raised the issue of its subject matter jurisdiction *sua sponte*, see Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-63 (2d Cir. 2009), issuing an Order to Show Cause to plaintiff as to why the action should not be dismissed. Of particular concern is that plaintiff has named the State of New York, the New York State Department of Taxation, and the Internal Revenue Service as defendants to foreclose the assertion of tax or other liens.[1] Plaintiff has responded to the Order to Show Cause.

---

[1] The Court also questioned whether the New York City Parking Violations Bureau and the New York City Environmental Control Board were amenable to suit. The City of New York is a municipal corporation, incorporated and with its principal place of business in New York, so it is diverse from plaintiff. In addition, New York's Real Property Actions and Proceedings Law provides that "any department, bureau, board, commission,

I.   **State of New York**

We start from the proposition that a State cannot be sued on diversity grounds because it is not a citizen of any State. "There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." Moor v. Cnty. of Alameda, 411 U.S. 693, 717, 93 S. Ct. 1785 (1973). Nevertheless, plaintiff cites a New York statute, which provides that the State may be made "a party defendant [in foreclosure actions] in the same manner as a private person," RPAPL 201, and argues that it makes the State of New York a citizen of New York for the purposes of diversity jurisdiction. The State of New York cannot, however, make itself a citizen of New York for the purposes of diversity jurisdiction, and plaintiff naming the State as a defendant in this action destroys diversity. See State Highway Comm'n v. Utah Constr. Co., 278 U.S. 194, 199-200, 49 S. Ct. 104 (1929) ("No consent by the State to submit itself to suit could affect the question of diverse citizenship.").

II.  **New York State Department of Taxation and Finance**

The more complicated question is the citizenship of the Department of Taxation. For this, we must start with Cowles v. Mercer County, 74 U.S. (7 Wall.) 118, 121-122 (1868), and then turn to State Highway Commission and Moor. In Cowles, the Court held that a County's board of supervisors is a citizen of Illinois. In so holding, the Court relied on the fact that "the board of supervisors [is] a corporation authorized to contract for the county." Id. at 122.

Then, in State Highway Commission, the Court determined whether a state-level commission is deemed a citizen of the State for purposes of diversity jurisdiction, or whether the State's non-citizen status is imputed to it. The Court did not cite Cowles, nor did it discuss whether the commission was incorporated under state law. Rather, the Court held that the

---

officer, agency or instrumentality" of a city may be named a defendant in an action affecting real property. RPAPL 202-a. Accordingly, the New York City Parking Violations Bureau and the New York City Environmental Control Board are suable entities in this action as agents of the City of New York.

2

answer turns on whether the commission is "the arm or alter ego of the State" – i.e., whether the lawsuit is, "in effect . . . against the State." 278 U.S. at 199-200, 49 S. Ct. 104; see also Krisel v. Duran, 386 F.2d 179, 181 (2d Cir. 1967) ("It is immaterial whether the state engages in activities in its own name or through an 'arm' or 'alter ego.' For the purpose of diversity jurisdiction, the determinative factor is whether the state is the real party in interest.").

In Moor, the Court built upon the "arm or alter ego" concept discussed in State Highway Commission while also tying that discussion back in with the bright-line approach used in Cowles. Specifically, the Court considered whether a county within a State is deemed part of the State, so that it also has no citizenship, or whether it has a sufficiently independent existence so that its citizenship can be determined separately from the State's lack of citizenship. The Court discussed Cowles and recognized that "[t]he original source of [the arm or alter ego] principle was the rule that corporations are citizens of the State in which they are formed, and are subject as such to the diversity jurisdiction of the federal courts." Moor, 411 U.S. at 718, 93 S. Ct. 1785. The county at issue in Moor had "corporate powers and [was] designated a body corporate and politic" under state law. Id. at 719 (internal quotation marks and footnotes omitted).

Under Cowles, that alone should have been sufficient to deem it a citizen of the state for diversity purposes. The county, however, argued that it was not a municipal corporation, but was rather an agent or arm of the state. Accordingly, the Court examined the structure of the county – including all of its corporation-like features – and determined that it "has a sufficiently independent corporate character to dictate that it be treated as a citizen of [the state] under . . . Cowles."

The cases that have followed Moor have generally abandoned the bright-line approach from Cowles and have instead engaged in a case-by-case analysis that relies on a number of

3

factors to measure independence: (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State. See, e.g., Univ. of R.I. v. A.W. Chesterton Co., 2 F.3d 1200, 1203-17 (1st Cir. 1993).

These factors measure independence as a reflection of what might be called a rule of "corporate relativity" of the entity in question. See Moor, 411 U.S. at 718-21, 93 S. Ct. 1785. That is, courts look to whether a governmental entity is sufficiently corporation-like for purposes of determining its citizenship. If the governmental entity satisfies the requirements of corporate relativity, then, under this approach, the definition of corporate citizenship under 28 U.S.C. § 1332(c) becomes applicable, and the entity will have its own separate citizenship.[2]

The Second Circuit has not written extensively on its approach for determining whether a governmental entity is a citizen for purposes of diversity jurisdiction. In Krisel, which was post-Cowles and State Highway Commission but pre-Moor, the Court relied entirely on the arm or alter ego analysis in determining that the Economic Development Administration of Puerto Rico was not a citizen of Puerto Rico for diversity purposes. (The Court did not cite Cowles and did not discuss the entities status as a corporation). Following Moor, the Circuit has implicitly utilized the corporate relativity approach while discussing whether governmental entities are

---

[2] It follows that if a government entity is sufficiently corporation-like, then it will not be an arm or alter ego of the state.

4

aligned closely enough with the state to warrant treating it like the state. See World Trade Ctr. Properties, LLC v. Hartford Fire Ins. Co., 345 F.3d 154, 162-63 (2d Cir. 2003) (holding that the Port Authority of New York and New Jersey, a "municipal corporate instrumentality," is a citizen of New York and New Jersey because it "is not so closely aligned with the two state governments that created it"); N.Y. Life Ins. Co. v. Conn. Dev. Auth., 700 F.2d 91, 95 n.5 (2d Cir. 1983) (holding that the Connecticut Development Authority is a citizen of Connecticut because it is "a political subdivision of the state that is empowered to sue and be sued").[3]

In applying these principles to the instant case, it is clear that the Department of Taxation fails to warrant treatment as a citizen under any approach. First, the Department of Taxation is not organized as a corporation under New York law. It therefore does not satisfy the bright-line approach taken in Cowles.

Second, it seems clear that the State of New York, and not the Department of Taxation, is the real party in interest. In arguing to the contrary, plaintiff asserts that it merely named the Department of Taxation as a party because it filed two tax warrants against the mortgagor after plaintiff received and recorded its mortgage (plaintiff wants to sell the mortgaged property free and clear of those subordinate liens). Plaintiff also points out that the Department of Taxation can be sued "[i]n any action affecting real property" if it has a lien on the property. RPAPL 201.

Both arguments are unavailing. First, although the Department of Taxation is named as the creditor on the tax warrants, the State of New York is the lienholder. See 20 NYCRR 5005.1(b)(3) ("A filed tax warrant . . . secures the State of New York as a lienholder of the taxpayer's personal and real property," (emphasis added)). Second, "consent by the State to

---

[3] At least one Circuit has recognized that if the governmental entity is indeed incorporated, that ends the inquiry – a corporation, even a state owned or sponsored corporation, is a citizen of the State that created it. See Ind. Port Comm'n v. Bethlehem Steel Corp., 702 F.2d 107, 109-10 (7th Cir. 1983).

submit itself to suit [does not] affect the question of diverse citizenship." State Highway Comm'n, 278 U.S. at 199-200, 49 S. Ct. 104; see also Krisel, 386 F.2d at 181.[4] Thus, under the "arm or alter ego" approach of State Highway Commission and Krisel, the State's non-citizenship is imputed to the Department of Taxation.

Finally, the Department of Taxation fails the corporate relativity approach utilized in Moor and its progeny. Here, it is important to note the distinction between a "pure" governmental division like the Department of Taxation and a political subdivision like a county, only the latter of which was at issue in Moor. In general, counties operate with more independence from the State than State functional departments that are intimately tied to the daily activities of the State.

In the case of the Department of Taxation, it appears to be merely the treasury department of the State. See State of New York Department of Taxation and Finance, Strategic Plan Update 2010-2011, at 1, *available at* http://www.tax.ny.gov/pdf/strategic_plan/strategic_plan_2010_11.pdf (hereinafter "Strategic Plan Update"). Its main purpose is to collect a major portion of state revenues and remit them to the State. See N.Y. Tax Law § 171-a(1); see also Strategic Plan Update, supra at 1 (noting that the "core mission" of the Department of Taxation is "[t]o efficiently collect tax revenues in support of State services and programs while acting with integrity and fairness in the administration of the tax laws of New York State"). Plaintiff has offered no evidence that the Department of Taxation has the indicia of corporate independence necessary to find that it is a separate entity from the State, and indeed its entire *raison d'etre* is to

---

[4] In New York Life Insurance Co., the Second Circuit noted that the Connecticut Development Authority, an agency of the State of Connecticut, was a citizen of Connecticut for purposes of diversity jurisdiction because it is "a political subdivision of the state that is empowered to sue and be sued." 700 F.2d at 95 n.5. This statement is inapposite to the Supreme Court's decision in State Highway Commission and the Second Circuit's decision in Krisel, both of which held that a governmental entity's amenability to suit, on its own, is insufficient to make the entity a citizen of the State when the suit is essentially against the State. See State Highway Comm'n, 278 U.S. at 199-200, 49 S. Ct. 104; Krisel, 386 F.2d at 181.

supply financing to the State. Thus, it cannot be joined in a diversity case. See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

Even if the Department of Taxation satisfied the corporate relativity gloss that some cases have placed on Moor, however, I would still find that the Department of Taxation is a non-citizen. I believe that these cases' reading of Moor is inconsistent with extensive Supreme Court authority both before and after that decision. The Supreme Court has consistently held that the only juridical entities entitled to be treated as corporations under 28 U.S.C. § 1332(c) are corporations.

The Supreme Court has generally treated corporations differently from all other unincorporated entities. In 1844, the Court held "that a corporation created by and doing business in a particular state . . . [is] capable of being treated as a citizen of that state, as much as a natural person." Louisville, C. & C. R.R. Co. v. Letson, 43 U.S. (2 How.) 497, 558 (1844). This judicially created diversity rule overturned Bank of United States v. Deveaux, 9 U.S. (5 Cranch) 61 (1809), which had held that "a corporation . . . [was] certainly not a citizen," and its citizenship had to therefore be determined by "look[ing] to the character of the individuals who compose [it]." Id. at 86, 91-92. Ten years later, the Court reaffirmed the rule announced in Letson, but based its holding on a conclusive presumption that "those who use[d] the corporate name and exercise[d] the faculties conferred by it" were deemed citizens of the corporation's state of incorporation. Marshall v. Baltimore & Ohio R.R. Co., 57 U.S. (16 How.) 314, 329 (1854). This judicially created diversity rule for corporations endured for over a century, until 1958, when Congress codified and modified the rule first announced in Letson, and established that "a corporation shall be deemed a citizen of any State by which it has been incorporated and

of the State where it has its principal place of business." Pub. L. No. 85-554, 72 Stat. 415 (codified as amended at 28 U.S.C. § 1332(c)).

Both prior to and after Congress amended 28 U.S.C. § 1332(c) in 1958, the Supreme Court has refused to extend its judicially-created rule for corporations to other entities. Starting with Chapman v. Barney, 129 U.S. 677, 9 S. Ct. 426 (1889), the Court created a doctrinal wall separating corporations from all other unincorporated entities. Specifically, the Court refused to treat a "joint stock company organized under a law of the State of New York" as a citizen of New York because it was not a corporation. Id. at 682. Rather, the Court determined its citizenship by looking to the citizenship of its members. Similarly, in Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 20 S. Ct. 690 (1900), although the Court recognized that a limited partnership association had "some of the characteristics of a corporation," it still held that such an entity should not be treated as a corporation for diversity purposes because the rule for corporations "must not be extended." Id. at 456, 457; see also United Steelworkers of Am. v. R.H. Bouligny, Inc., 382 U.S. 145, 150-53, 86 S. Ct. 272 (1965) (refusing to treat an unincorporated labor union as a corporation for diversity purposes).

The most recent pronouncement of the Supreme Court is Carden v. Arkoma Assocs., 494 U.S. 185, 187-92, 110 S. Ct. 1015 (1990). There, in determining that a limited partnership would not be treated as a corporation, but as a citizen of every state of which its general and limited partners are citizens, the Court noted that "[t]he 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control." Id. at 197. According to the Court, the determination of "[w]hich of [these entities] is entitled to be considered a 'citizen' for diversity purposes, and which of their members' citizenship is to be

consulted, are questions more readily resolved by legislative prescription than by legal reasoning." Id. The Court noted that "Congress has not been idle" in "further adjust[ing]" "the field of diversity policy with regard to artificial entities." Id. at 196 (discussing the 1958 amendment to 28 U.S.C. § 1332(c)); see also Bouligny, 382 U.S. at 153, 86 S. Ct. 272 ("Whether unincorporated labor unions ought to be assimilated to the status of corporations for diversity purposes, how such citizenship is to be determined, and what if any related rules ought to apply, are decisions which we believe suited to the legislative and not the judicial branch . . . .").[5] The Carden Court thus rejected the approach of "look[ing] beyond the incorporated/unincorporated dichotomy and . . . study[ing] the internal organization, state law requirements, management structure, and capacity or lack thereof to act and/or sue, to determine [a limited partnership's] citizenship." Carden, 494 U.S. at 190, 110 S. Ct. 1015. In short, Carden created a bright-line rule and rejected the corporate relativity approach: a corporation is to be treated as a corporation, and everything else is not.

The utility of Carden's bright-line approach is well illustrated by the First Circuit's decision in University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200 (1st Cir. 1993). There, the Court, purporting to apply Moor but without referring to Carden, undertook an exhaustive, factor-by-factor corporate relativity analysis to determine that the Rhode Island Board of Higher Education is not a mere department of the State of Rhode Island and thus had its own citizenship. My difficulty with the First Circuit's approach and its resulting complex analysis is that it creates the potential for satellite litigation in every case involving a State entity or agency, as opposed to the application of Carden's bright-line approach which would simply

---

[5] The Court has only breached the Chapman v. Barney doctrinal wall on one occasion. In Puerto Rico v. Russell & Co., 288 U.S. 476, 53 S. Ct. 447 (1933), the Court held that the *sociedad en comandita* entity, which was organized under the laws of Puerto Rico, was a citizen of Puerto Rico. In Carden, however, the Court read Bouligny as limiting Russell to its facts.

ask whether an entity is incorporated or not. As Judge Hornby, concurring in the result in <u>Rhode Island</u>, noted:

> It takes the court 38 typed pages (8 1/2 x 11") of closely reasoned text to decide whether the University of Rhode Island is a citizen-a determination that has nothing to do with the substance of the real world dispute between these parties, but simply resolves where to try their lawsuit. Is this approach really essential for determining whether a federal court has jurisdiction?

2 F.3d at 1219 (Hornby, J., concurring). The corporate relativity approach thus not only will often require the use of substantial resources by the parties and the Court on what should be a straightforward jurisdictional assessment, but, as <u>Carden</u> suggested, an affirmative finding of separate citizenship for an unincorporated entity runs contrary to Congress' explicit determination that corporations, and only corporations, should have their citizenship determined by their State of incorporation and principal place of business.

Nor is the corporate relativity approach at all necessary under the precedents. As Judge Hornby reasoned in <u>Rhode Island</u>, the entity in question there was "separately incorporated with the power to sue and be sued. ... What more need be said to conclude that the Rhode Island Board is a citizen for diversity purposes?" <u>Rhode Island</u>, 2 F.3d at 1220 (Hornby, J., concurring). As he further noted, <u>Moor</u> itself did not require the majority's exhaustive analysis:

> [I]n <u>Moor</u> the Supreme Court spent only one paragraph summarizing California statutes to conclude that the county was a corporation with important powers independent of the state and a second paragraph summarizing a California Supreme Court decision finding California counties to be corporations. Based on those two summary paragraphs, the Supreme Court concluded that "the county has a sufficiently independent corporate character to dictate that it be treated as a citizen of California . . . ."

<u>Id.</u>

In sum, what has happened is that in <u>Moor</u>, the Supreme Court considered the specific question of whether a California county was in fact a corporation under California law and, finding that it was, gave it a citizenship independent of the State's lack thereof. Subsequent

10

cases, however, have inflated <u>Moor</u>'s brief analysis of that issue to require a fact-specific examination of every governmental entity to determine how like a corporation it actually is. None of these cases have cited <u>Carden</u> or its predecessors' framework, which is fully consistent with <u>Moor</u>, of simply asking whether an entity is or is not a corporation under State law.

In the instant case, the Department of Taxation, whatever its corporate-like attributes, is not a corporation under New York law. It is simply an agency of the State of New York charged with carrying out one of the State's essential functions. It thus has no citizenship separate from that of the State, and since the State is not a citizen for diversity purposes, neither is the Department of Taxation.[6] Thus, plaintiff would not be able to bring an action against it based on diversity of citizenship even if it satisfied <u>Moor</u>'s corporate relativity rule.[7]

## III. Internal Revenue Service

Nor can the Internal Revenue Service be subject to suit in a diversity case. It is obviously not a citizen of any State. The only possible basis for joining it here would be if there was federal question jurisdiction over the claim against it.

At first blush, such jurisdiction would appear to exist. Section 2410(a)(2) of Title 28 provides that:

> the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter . . . to

---

[6] Although <u>Moor</u>'s progeny assumes, always without discussion, that if an unincorporated governmental entity satisfies the corporate relativity test, it will be deemed a citizen of the State where it is located, I see no reason why that assumption is compelled. Not every person or entity has to have a citizenship for diversity purposes – only those for whom or which Congress has so provided. As noted above, a state has no citizenship; a U.S. citizen domiciled abroad has no State citizenship, see <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 828, 109 S. Ct. 2218 (1989); and if that same U.S. citizen is a limited partner in a limited partnership, the limited partnership has no State citizenship for diversity purposes either, see <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 68-69 (2d Cir. 1990). Thus, an unincorporated governmental entity that is sufficiently independent of the State under <u>Moor</u>'s progeny to warrant treatment as an independent entity would still, in my view, be unamenable to diversity jurisdiction.

[7] Plaintiff relies on the fact that the Department of Taxation has been named in other foreclosure actions in this district which have proceeded to judgment. Since the issue was not raised in those cases, they are of no precedential value. See <u>Hagans v. Lavine</u>, 415 U.S. 528, 533 n.5, 94 S. Ct. 1372 (1974).

> foreclose a mortgage or other lien upon . . . real or personal property on which the United States has or claims a mortgage or other lien.

28 U.S.C. § 2410(a)(2). However, just as the State of New York cannot declare itself a citizen by a statutory enactment confirming its amenability to suit in mortgage foreclosure cases, see State Highway Comm'n, 278 U.S. at 199-200, 49 S. Ct. 104, the great weight of federal authority holds that § 2410(a)(2) merely waives the U.S. Government's sovereign immunity in mortgage foreclosure actions; it does not provide a basis for federal jurisdiction. See e.g., Macklin v. United States, 300 F.3d 814, 819 (7th Cir. 2002) ("All [§ 2410] does is waive sovereign immunity. It does not authorize quiet title suits; it does not confer federal jurisdiction over them; it merely clears away the obstacle that sovereign immunity would otherwise place in the path of such a suit."); see also Law Offices of Damien Bosco v. Hu-Del Wines & Liquor, Co., No. 06 Civ. 4880, 2008 U.S. Dist. LEXIS 13554, at *7-8 (E.D.N.Y. Feb. 22, 2008) (collecting cases).[8] There is no original jurisdiction over the claim against the IRS.[9]

## IV. Voluntary Dismissal of Non-Diverse Entities

Plaintiff, in responding to this Court's Order to Show Cause, has indicated its willingness to dismiss the State of New York if the Court finds it to be non-diverse. (It has not commented on whether it would also dismiss the Department of Taxation or the IRS). I see no reason why plaintiff should not be able to dismiss those defendants whose presence would destroy diversity. Courts may not allow a plaintiff to dismiss a non-diverse party for the purpose of creating diversity jurisdiction if that party's absence would require dismissal pursuant to Federal Rule of

---

[8] In C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co., 903 F.2d 114 (2d Cir. 1990), the Second Circuit held that it had subject matter jurisdiction to enforce an arbitration award rendered against the Secretary of Housing and Urban Development and stated that it had subject matter jurisdiction to determine a second claim to foreclose upon a lien on property as to which the Secretary also had a lien. Although the Circuit appears to have based its statement regarding subject matter jurisdiction for the second claim on § 2410, the issue of jurisdiction under that statute was not challenged.

[9] If plaintiff joined the IRS in a state court foreclosure action, the IRS would nevertheless have the option of removing the case to federal court. See 28 U.S.C. § 1444.

Civil Procedure 19(b). See CP Solutions PTE, Ltd. v. Gen. Electric Co., 553 F.3d 156, 159 (2d Cir. 2009); Pik v. Inst. of Int'l Educ., No. 08 Civ. 3909, 2008 U.S. Dist. LEXIS 95676, at *10 (S.D.N.Y. Nov. 10, 2008). Under Rule 19(b), "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." This is a "flexible standard," and Rule 19(b) provides a list of non-exclusive factors for courts to consider. CP Solutions PTE, Ltd., 553 F.3d at 159.

The purpose of including lienholders as defendants in a mortgage foreclosure action is to enable a sale of the property free and clear of their liens, with the lienholders paid out of the proceeds of the sale according to their priority. It is unclear at this stage whether the liens at issue have a higher or lower priority than plaintiff's mortgage. Nevertheless, if plaintiff wishes to have the property sold subject to the liens, I see no impediment to it doing so.[10] See In re Comcoach Corp., 698 F.2d 571, 574 (2d Cir. 1983) ("New York law provides that lessees are necessary parties in foreclosure actions. Necessary parties are not always indispensable parties, however, whose absence mandates dismissal of the action. The absence of a necessary party in a foreclosure action simply leaves such party's rights to the premises unaffected." (internal citations omitted)); see also Glass v. Estate of Gold, 48 A.D.3d 746, 746-47, 853 N.Y.S.2d 159 (2d Dept. 2008).

---

[10] Plaintiff is cautioned that my decision allowing it to proceed in this manner does not in any way determine whether a decision to foreclose upon the mortgage but not the liens would permit the borrower to claim that plaintiff foreclosed in a commercially unreasonable manner and thereby depressed the sales price of the property.

13

## V.     Conclusion

Plaintiff has not had an opportunity to advise the Court whether it wishes to dismiss all of the non-diverse parties identified in this decision. It must do so by April 8, 2011, failing which the action shall be dismissed for lack of subject matter jurisdiction.

**SO ORDERED.**

/s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
       April 1, 2011